Case 4:24-cr-00327   Document 1   Filed on 06/12/24 in TXSD   Page 1 of 9

Sealed
Public and unofficial staff access to this instrument are prohibited by court order

United States Courts
Southern District of Texas
FILED
**June 12, 2024**
Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | Criminal No. |
| v. § | |
| § | **UNDER SEAL**   4:24-cr-327 |
| SHARON PICKROM, § | |
| a/k/a SHARON DENISE SANDERS, § | 18 U.S.C. § 371 |
| a/k/a SHARON SANDERS, § | 42 U.S.C. § 1320a-7b(b)(1) |
| a/k/a SHARAN PICKRON, § | |
| § | |
| Defendant. § | |

# INDICTMENT

The Grand Jury charges:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### Entities

1. GP FRESH-N-CLEAN ("Fresh-N-Clean") was a purported domestic nonprofit corporation registered with State of Texas, located in Houston, Texas, in the Southern District of Texas. Fresh-N-Clean was enrolled as a provider with the U.S. Department of Labor, Office of Workers' Compensation Programs ("DOL-OWCP"), and listed physicians two physicians as providers on its enrollment form without their consent.

2. CLINIC 1 was a purported domestic nonprofit corporation registered with the State of Texas, located in Houston, Texas, in the Southern District of Texas. CLINIC 1 purported to be a medical clinic.

3. Custom Care Pharmacy, LLC ("Custom Care"), was a pharmacy located in Jersey Village, Texas, in the Southern District of Texas. Custom Care purported to fill prescriptions for injured federal workers who had benefits through DOL-OWCP.

1

**Defendant and Individuals**

4. Defendant **SHARON PICKROM, a/k/a SHARON DENISE SANDERS, a/k/a SHARON SANDERS, a/k/a SHARAN PICKRON** ("**SHARON PICKROM**"), a resident of Houston, Texas, was listed as one of Fresh-N-Clean's directors.

5. PERSON 1, a resident of Houston, Texas, was **SHARON PICKROM**'s husband, and was listed as Fresh-N-Clean's Chief Executive Officer and Director, as well as its chairman.

6. PERSON 2 a resident of Houston, Texas, was CLINIC 1's registered agent.

7. Carmalita Landry-Ovid ("Landry"), a resident of Houston, Texas, was a pharmacist, and was Custom Care's Manager and Director.

**The Federal Employee's Compensation Act**

8. The Federal Employee's Compensation Act ("FECA") paid workers' compensation benefits to federal employees who suffered an injury, disease, or death in the performance of duty. An injured federal worker insured under FECA was generally referred to as a "claimant."

9. FECA was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

10. FECA paid for, among other things, necessary medical care and prescription and pharmaceutical drugs on behalf of claimants for injuries sustained during the claimants' work for the federal government. FECA would not pay claims submitted by a pharmacy for prescriptions for drugs that FECA knew, among other things, (1) were medically unnecessary for the treatment of the claimant's specific medical needs, or (2) were the result of a violation of the federal Anti-Kickback Statute.

11. DOL-OWCP administered the benefits under FECA. Health care providers ("providers"), intending to provide health care services and items to claimants, were required to enroll with DOL-OWCP to receive a provider identification number and reimbursement under FECA. Form OWCP-1168 was used for enrollment and updating provider information. By completing and submitting Form OWCP-1168, a provider certified that all the federal and state licensure and regulatory requirements applicable to their provider type were satisfied.

12. DOL-OWCP contracted with Affiliated Computer Services ("ACS") to provide medical claims processing and payments. ACS served as the billing administrator for FECA. In this capacity, ACS received provider enrollment forms from prospective FECA providers, assigned provider numbers, and processed and paid claims for benefits under FECA.

13. All providers who enrolled with DOL-OWCP did so through ACS. Once enrolled, a provider was given access to the ACS online system. Through this ACS system, a provider could submit claims, check the status of pending claims, and perform other billing-related functions. A provider could submit bills using either the ACS provider number or the provider's Social Security number.

14. Providers were required to identify themselves on each claim submitted for services provided. All claims submitted were required to be supported by medical evidence. The submission of a claim and acceptance of payment by a provider signified that the service for which reimbursement was sought was performed as described, medically necessary and appropriate, and properly billed in accordance with accepted industry standards. FECA paid claims for prescriptions on behalf of beneficiaries to the pharmacy's financial institution by wire, check, and electronic transfer.

## COUNT 1
### Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks
### (18 U.S.C. § 371)

15. Paragraphs 1 through 14 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

16. Beginning in or around 2017, and continuing through in or around 2020, the exact dates being unknown, in the Houston Division of the Southern District of Texas, and elsewhere, the defendant,

**SHARON PICKROM**,

did knowingly and willfully combine, conspire, confederate, and agree with Landry, PERSON 1, PERSON 2, and others known and unknown to the Grand Jury, to commit the following offenses against the United States, that is:

    a. to defraud the United States by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful government functions of the DOL-OWCP in its administration and oversight of FECA;

    b. to violate Title 42, United States Code, Section 1320a-7b(b)(2) by offering and paying any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to any person to induce such person: (i) to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, FECA; and (ii) to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, that is, FECA; and

   c. to violate Title 42, United States Code, Section 1320a-7b(b)(1) by soliciting and receiving any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check and interstate wire transfer, in return for: (i) referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, FECA; and (ii) purchasing, leasing, ordering, and arranging for and recommending purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, that is, FECA.

### Purpose of the Conspiracy

17. It was a purpose of the conspiracy for **SHARON PICKROM** and coconspirators known and unknown to the Grand Jury to unlawfully enrich and benefit themselves through, among other things: (a) offering, paying, soliciting, and receiving illegal kickbacks and bribes in exchange for the referral of prescriptions for high-reimbursing drugs; (b) submitting and causing the submission of claims to DOL-OWCP for prescription drugs that were induced by kickbacks and bribes, medically unnecessary, ineligible for reimbursement, and not provided as represented; (c) concealing and disguising the payment and receipt of kickbacks and bribes, and the submission of false and fraudulent claims; and (d) diverting the proceeds of the conspiracy for the personal use and benefit of the defendant and her coconspirators, and to further the conspiracy.

### Manner and Means of the Conspiracy

18. The manner and means by which the defendant and her coconspirators, known and unknown to the Grand Jury, sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

19. Landry and others filed and caused to be filed Form OWCP-1168 and Payment Information Forms to enroll Custom Care as a provider with DOL-OWCP and enable payments to be transmitted electronically from DOL-OWCP to Custom Care.

20. Landry and others created, and caused to be created, prescription pads containing high-reimbursing drugs that were designed to maximize reimbursement from DOL-OWCP rather than being based on a claimant's individual medical need.

21. **SHARON PICKROM** and others, through Fresh-N-Clean and CLINIC 1, referred prescriptions for purported claimants to Custom Care for high-reimbursing drugs. Neither the prescribers nor the purported claimants were aware of or authorized the prescriptions, which were forged.

22. In exchange, Landry paid **SHARON PICKROM** illegal kickbacks and bribes of between thirty and thirty-five percent of the reimbursements Custom Care received from DOL-OWCP (less cost of goods) or $7,000 every other week.

23. At **SHARON PICKROM**'s direction, Landry concealed and disguised these illegal kickbacks and bribes as donations to Fresh-N-Clean by falsely denoting "charitable contribution" on the payments.

24. DOL-OWCP reimbursed Custom Care approximately $1,741,549.50 for prescription claims **SHARON PICKROM** and her coconspirators fraudulently submitted and caused to be submitted for prescriptions issued without the authorization of the purported prescribers, for claimants who never requested and often did not receive the prescriptions Custom Care purportedly dispensed.

25. Between in or around November 2017, through in or around February 2020, Landry, through Custom Care, paid **SHARON PICKROM** and her coconspirators approximately

6

$406,000 in kickbacks and bribes disguised as charitable contributions in the form of checks and electronic funds transfers made to Fresh-N-Clean and PERSON 1.

### Overt Acts

26. In furtherance of the conspiracy, and to accomplish its object and purpose, at least one of the coconspirators committed and caused to be committed in the Houston Division of the Southern District of Texas, and elsewhere, at least one of the following overt acts, among others:

27. On or about December 14, 2017, Landry paid or caused to be paid an illegal kickback and bribe in the form of a $3,000 check to "Sharon Sanders" with the memo line falsely stating that it was a "contribution." The back of the check was endorsed with the name "Sharon Sanders."

28. On or about June 17, 2019, Landry paid or caused to be paid an illegal kickback and bribe in the form of a$3,000 check to Fresh-N-Clean with the memo line falsely stating it was a "charitable contribution." The back of the check was endorsed with PERSON 1's name and "GP FRESH-N-CLEAN."

29. On or about February 14, 2020, Landry paid or caused to be paid an illegal kickback and bribe in the form of a $2,500 check to PERSON 1 with the memo line falsely stating it was a "charitable donation." The back of the check was endorsed with PERSON 1's name.

All in violation of Title 18, United States Code, Section 371.

### COUNTS 2 AND 3
### Receipt of Health Care Kickbacks
### (42 U.S.C. § 1320a-7b(b)(1) & 18 U.S.C. § 2)

30. Paragraphs 1 through 14 and 18 through 25 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

31.     On or about the dates enumerated below, in the Houston Division of the Southern District of Texas, and elsewhere, the defendant,

**SHARON PICKROM**,

aiding and abetting, and aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully solicit and receive remuneration, specifically kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check, as set forth below, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, FECA; and in return for purchasing, leasing, ordering, and arranging for and recommending purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, that is, FECA, as set forth below, each constituting a separate count in this Indictment:

| Count | Approx. Date | Pay To | Amount | Description |
|---|---|---|---|---|
| 2 | June 17, 2019 | Fresh & Clean | $3,000 | Check #1731 from Wells Fargo x2380 for "charitable contribution" |
| 3 | February 14, 2020 | PERSON 1 | $2,500 | Check #1447 from Wells Fargo x2380 for "charitable donation" |

Each in violation of Title 42, United States Code, Section 1320a-7b(b)(1), and Title 18, United States Code, Section 2.

## NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. §§ 982(a)(7) and 981(a)(1)(C), and 28 U.S.C. § 2461)

32.     Pursuant to Title 18, United States Code, Sections 982(a)(7) and 981(a)(1)(C), and Title 28, United States Code, Section 2461, the United States of America gives notice to the defendant, **SHARON PICKROM**, that upon her conviction of any of Counts One through Three of this Indictment, the United States intends to seek forfeiture of all property, real or personal, that

8

constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offenses.

## Property Subject to Forfeiture

33.     Defendant is notified that the property subject to forfeiture includes, but is not limited to, approximately $406,000.

## Money Judgment and Substitute Assets

34.     Defendant is notified that the United States will seek the imposition of a money judgment against defendant.  In the event that a condition listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of defendant in substitution up to the amount of the money judgment.

A TRUE BILL

Original Signature on File

_____
FOREPERSON

ALAMDAR S HAMDANI
UNITED STATES ATTORNEY

GLENN S. LEON
CHIEF
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

*Ethan Womble*
_____
Ethan Womble, Trial Attorney
Aleza Remis, Assistant Deputy Chief
Fraud Section, Criminal Division
U.S. Department of Justice